Tilghman, C. J.
This is a contest for priority, between a mortgagee and a judgment creditor, each of whom claims the money which came to the bands of Morgan Neville, late sheriff of the county of Allegheny, by virtue of a sale made by him on sundry executions against Irwin and Henry Wallace. In the bill of exceptions brought up with the record, the following facts appear. The defendant sold a large estate consisting of several farms, by by virtue of six executions, for six different persons, founded on judments agaiñst Irwin and Henry Wallace. Of these judgments, that of the plaintiff was the youngest, and was dated the 16th of February, 1820. The proceeds of the sale were sufficient to pay all the judgments, including that of the plaintiff. But the mortgagee, George Wallace, brother of the mortgagors, Irwin and Henry Wallace, contends that his mortgage is entitled to a preference to the judgment of the plaintiff; although he yields to the other five judgment creditors. The circumstances attending *228 this mortgage, are peculiar. It bears date the 15th of September, 1818, but the year 1818 was inserted, by mistake, instead of 1819. It was signed by the morgagors, without subscribing witnesses, about the beginning of December, 1819, and delivered to the mortgagee, sometime before the 25th of December, 1819, by Irwin Wallace, one of the mortgagors. The mortgagee knew nothing of this mortgage until it was delivered to him, and having received it, he gave it back to his brother Irwin, and requested him to have it recorded. The avowed object of the mortgage was, to secure a debt of two thousand five hundred dollars, for money lent by the mortgagee to the mortgagors, and also to indemnify several persons who had indorsed notes of the mortgagors, which had been discounted in some of the banks at Pittsburg. The mortgage was designedly ante-dated, by inserting the month of September, instead of December, but this was unknown to the mortgagee. Irwin Wallace, having received the mortgage from his brother George, for the purpose of being recorded, kept it in his own hands until the 3d March, 1820, when it was acknowledged before an alderman of Pittsburg, and recorded the same day, the alderman having signed his name as a witness. Irwin Wallace, who was examined as a witness in the cause, declared, that it was his intention, in case his affairs had taken a prosperous turn, according to his hopes, so that he might have been enabled to make satisfaction to the mortgagors, to have cancelled the mortgage instead of putting it upon record — but this intention was not disclosed to his brother George. Previous to the sheriff’s sale, George Wallace published a printed advertisement, giving notice to all persons, that he claimed a lien, by virtue of his mortgage, on all the lands levied on, and to be sold by the sheriff. On this state of facts several questions of law arose, on the trial of the cause, on which the president delivered an opinion in favour of the mortgagee, which was excepted to by the counsel for the plaintiff.
1st. Was the mortgage fraudulent, under the statute of Elisabeth?
It certainly was not fraudulent. The consideration was fair, that is to say, a debt due to the mortgagee, for money lent, and indorsements on account of the mortgagors, by sundry persons who had made themselves responsible to one of the Banks of Pitts-burg. That a debtor has a right to prefer a bona fide creditor, is a principle not to be disputed. The ante-dating of the mortgage was very improper, but could not affect the mortgagee, who was not privy to it.
2d. Was the mortgagee estopped from claiming any part of the proceeds of the sheriff’s sale, by his advertisement, giving notice of his mortgage ?
The advertisement of the mortgagee did not create an estoppel. It was not in his power to prevent a sale, and therefore it was pro *229 per that he should give notice of his mortgage. At least there was no impropriety in such notice. It is objected, that this advertisement deterred those who intended to purchase, and thus occasioned a sale of the property at less than its value. But to this it may be-answered, that if the persons intending to purchase, had looked into the matter, they would have found, that the land being sold by executions-on judgments prior to the mortgage, the sheriff’s deed would convey a title paramount to' the mortgage, and, therefore, not to be affected by it. Besides, the sheriff’s sale is always under the control of the court, whose duty it is to exercise their power liberally, on proof of circumstances shewing improper conduct, in consequence of which the property was struck off at a price below its value. In the present case, the plaintiff is-the only discontented person- He loses his debt, if the mortgagee comes in before him. All the other execution creditors had preference to the mortgage, and have been paid. The plaintiff might have complained to the Court of Common Pleas, and would have obtained an order for setting aside the sale, if he could have made out a sufficient case. But why should the mortgagee be estopped from claiming payment of his debt? He had a lien, subject to prior judgments. He could not prevent a sale by virtue of the execution on these prior judgments. He cannot resort to the land in the hands of the purchasers, by any proceeding on his mortgage, because it was lawfully sold and conveyed by the sheriff. Then he must either lose his debt, or be let in, to receive the surplus in the hands of the sheriff, after satisfying prior incumbrances, I can see nothing which should prevent his coming in, and I am therefore of opinion that under the circumstances of the case there was no estoppel.
3d. It is contended by the plaintiff, that inasmuch as the lands were sold, by virtue of executions on the judgments of other persons, and not by any proceedings on the mortgage, no part of the proceeds of sale can be taken by the mortgagee.
My opinion will be confined to the case on the record, which is a sale- on sundry judgments prior to the mortgage. Now undoubtedly, in such a case, it has been the settled practice to apply the proceeds of sale to the payment of all incumbrances, whether by judgment or mortgage, according to their priority. What else could be done ? The purchaser, from the sheriff, drawing his title from the first incumbrance, holds the land discharged from all subsequent incumbrances. What then is to be done with the surplus m -V.; - . •>,?&. . discharging the first incumbrance? — It must either be paid to the defendant in the execution, or applied to the discharge of ail younger incumbrances according to their priority. To pay it to the defendant, would be to destroy the lien of all subsequent mortgages and judgments. It must necessarily be applied, therefore, to the discharge of those incumbrances; and it makes no difference whether executions had been issued on them *230 or not. Those who are so unfortunate as not to be reached, until the money is all exhausted, must submit to the loss, and such is the case of the plaintiff. I am of opinion that there is no error in this record, and, therefore, the judgment should be affirmed.
Judgment affirmed.